OPINION
Defendant-appellant, Anthony T. Glenn, appeals his conviction, after a jury trial, for aggravated robbery in violation of R.C. 2911.01(A)(1) with a firearm specification pursuant to R.C. 2941.145(A), and aggravated burglary in violation of R.C. 2911.11(A)(1) with a firearm specification pursuant to R.C. 2941.145(A). We affirm the decision of the trial court.
During the weekend of July 11, 12, and 13, 1997, appellant, Heath Jennings, Bobby Fields, and Evelyn Rodriguez spent the entire weekend drinking and using drugs, mostly crack cocaine. Most of the drinking and drug use took place at Fields' apartment. During the course of the weekend, when the beer or cocaine ran out, two or more members of the group would leave the apartment and obtain more.
According to Jennings' testimony at trial, appellant and Fields had been arguing throughout the day of July 13, 1997. Evidently, Fields and Rodriguez had engaged in sexual intercourse, and this made appellant jealous. Jennings testified that in the early morning hours of July 14, 1997, appellant and Rodriguez left Fields' apartment. Jennings and Fields remained at the apartment. When appellant and Rodriguez returned, they forced their way into the apartment accompanied by a third person, Hubert Whitehead. Appellant, Rodriguez, and Whitehead came into the bedroom where Jennings and Fields were sitting on the bed. Jennings stated that Whitehead brandished a handgun, and Rodriguez asked Fields for his money. When Fields refused to relinquish his money, Whitehead fired a shot into the floor at his feet. Rodriguez then obtained Fields' wallet while appellant stood in the bedroom and watched.
Jennings testified that appellant, Whitehead, and Rodriguez then went into the kitchen, gathered a circle, and began going through Fields' wallet. Fields came into the kitchen to get his wallet back, and a fight ensued between Fields and Whitehead. Whitehead fired several shots amidst the melee, and one of the shots hit Fields in the stomach. Appellant, Whitehead, and Rodriguez ran out the back door and sped away in Rodriguez's car. Fields eventually died as a result of the gunshot wound.
Rodriguez testified that when they left Fields' apartment after the shooting, appellant was driving, she was in the passenger seat, and Whitehead was in the back seat. At one point, Whitehead threw a $100 bill, a $10 bill, and a $1 bill into the front seat. Once they were away from the scene, appellant slowed down, and Whitehead actually exited the vehicle before it came to a complete stop. Rodriguez testified that she did not take the $111 off the front seat, and she concluded that appellant must have taken it.
Officer Scott Scrimizzi testified that when he arrived at Fields' apartment on July 14, 1997, he observed glass broken out of the back door and a wallet lying on the back porch. Detective James A. Nugent, Sr. testified that the glass from the back door had been pushed into the kitchen from the outside, indicating a forced entry into the apartment. The wooden frame was also broken from around the door and was lying inside on the kitchen floor. Nugent also observed Fields' wallet lying on the rear porch of the apartment.
Detective Nugent further testified that he interviewed appellant on July 14, 1997. Nugent told appellant that the police were investigating a burglary where a person had been shot. Appellant responded that he did not break into anyone's house or shoot anyone. Appellant further stated that "the other guy did all the shooting." Appellant told Nugent that the gunman had just jumped "out of the bushes" when he and Rodriguez were walking from the car up to Fields' apartment, and then the gunman accompanied them into the apartment. Appellant later admitted that his initial statement was untrue. Appellant admitted that he had known Whitehead from previous drug deals and admitted that he and Rodriguez had picked Whitehead up in another part of town and brought him back to Fields' apartment.
Richard Benge also testified at trial. Benge was appellant's cell mate in the Butler County Jail after appellant's arrest. According to Benge, appellant admitted that he had robbed Fields because appellant was high at the time and "it felt right." Appellant also told Benge that originally Fields was to be taken out of town to a pond and robbed there, but as it turned out, the robbery ended up happening at Fields' apartment. Benge also testified that appellant admitted that he was counting the money when Whitehead shot Fields.
Kristen Sweeney testified that on July 14, 1997, she was sitting in a restaurant across the parking lot from Fields' apartment. Sweeney saw a white Cadillac circle the restaurant several times before parking behind the apartment building. Sweeney testified that she saw two black men get out of the car and go into the apartment. After several minutes, Sweeney heard gunshots from inside the apartment. When she looked out the window, she saw two men and a woman run out of the apartment. Both men were telling the woman to "hurry up" and "come on." Sweeney stated that the three people got into the Cadillac and took off.
Appellant testified in his own defense. According to appellant's testimony, he never felt any jealousy toward Fields for having sex with Rodriguez. Appellant also claimed that he did not know Whitehead had a gun in his possession. Appellant testified that neither he, Rodriguez, nor Whitehead forced their way into Fields' apartment. Appellant also testified that he did not see or touch a wallet at any time on July 14, 1997, and he never saw any money on the car seat while driving away from Fields' apartment.
Appellant was charged as an accomplice for aiding and abetting the burglary and robbery. On April 10, 1998, the jury found appellant guilty of aggravated robbery and aggravated burglary, with firearm specifications on both charges. Appellant now appeals his conviction, raising the following assignment of error for our review:
 GLENN'S CONVICTIONS FOR AGGRAVATED BURGLARY AND AGGRAVATED ROBBERY WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In order for an appellate court to reverse a jury verdict as against the manifest weight of the evidence, the appellate court must unanimously disagree with the jury's verdict on the weight of the evidence. See Section 3(B)(3), Article IV, Ohio Constitution. The standard for reversal for manifest weight of evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Thompkins, 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. In making this analysis, we must keep in mind that the trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1976), 10 Ohio St.2d 230, paragraph one of the syllabus.
In this case, appellant's testimony clearly contradicted that which was presented by the state's witnesses. However, the fact that there was conflicting testimony does not establish that appellant's conviction was against the weight of the evidence. Under Thompkins, we are required to sit as the "thirteenth juror" and consider witness credibility when evaluating the weight of the evidence. After carefully reviewing the record, we see no reason why we should question the jury's resolution of the conflicting testimony presented at trial. We are not convinced that the evidence weighs heavily against appellant's conviction, nor do we believe that the jury lost its way and created a manifest miscarriage of justice. See Thompkins at 387. Appellant's assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.